UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOODMAN BALL, INC.,<br><br>　　　　Plaintiff(s),<br><br>　　v.<br><br>CLEAR WATER USA, INC., et al.,<br><br>　　　　Defendant(s). | No. C07-1148 BZ<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |

Before the court are the motions[1] of defendants Clear Water USA, Inc. (Clear Water), Denouement Strategies, Inc. (Denouement), Escape Velocity of Tampa Bay, Inc. (Escape Velocity) and SolarDiesel Corporation (SolarDiesel) to dismiss the amended complaint for lack of personal jurisdiction, or in the alternative, to transfer venue.[2] Defendant Mach II

---

[1] After Clear Water and Denouement moved to dismiss, I granted plaintiff's request for jurisdictional discovery. Following discovery, plaintiff filed a first amended complaint which added three additional defendants, two of whom, Escape Velocity and SolarDiesel, then moved to dismiss.

[2] No defendant currently seeks dismissal for improper venue.

1

Aviation, Inc. (Mach II) acknowledged personal jurisdiction but joined in the request to transfer venue pursuant to 28 U.S.C. § 1404(a).[3]

The first amended complaint accuses Mach II and the moving defendants of infringing plaintiff's patents. Specifically, plaintiff alleges that defendants manufactured, sold, imported and distributed in California, water purification systems (the accused systems) that infringed plaintiff's patented water purification and power generation technology.

For purposes of these motions, the essence of plaintiff's amended complaint is that non-moving defendant Mach II contracted with Defense Supply Center Philadelphia to sell the accused systems to the government and deliver them to the U.S. Navy in Port Hueneme, California[4] and Gulfport, Mississippi. Mach II in turn entered into an agreement with Acqua America, Inc. (Acqua) for Acqua's affiliate to manufacture the units. Escape Velocity is charged with providing financing Mach II needed to purchase the accused systems. Denouement, Clear Water and SolarDiesel are charged with having played other roles in the distribution of the accused systems.

It appears from the record that all defendants were operated, at all relevant times, by two individuals, Walter Holmich and John Stanton. Mr. Holmich is president of Clear

---

[3] All parties have consented to my jurisdiction for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).

[4] Eighteen of the systems were shipped to Port Hueneme, California.

2

Water, a Florida corporation. Mr. Holmich was also the president of Mach II, a Florida corporation, until it was dissolved. Escape Velocity and Denouement are Florida corporations owned by Mr. Stanton. SolarDiesel is a wholly owned subsidiary of EarthFirst Technologies, Inc. Mr. Stanton is chairman of EarthFirst Technologies, Inc. Mr. Stanton and Mr. Holmich are friends.

The parties agree that because the personal jurisdiction inquiry in this case is intimately intertwined with the substance of the patent laws, the law of the Federal Circuit applies. The Federal Circuit and the Ninth Circuit agree that "where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003); see also Deprenyl Animal Health, Inc. V. University of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002); American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 589 (9th Cir. 1996). "In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." Electronics for Imaging, Inc., 340 F.3d at 1349.

The parties agree that California's long arm statute, California Code of Civil Procedure § 410.10, allows the

3

exercise of personal jurisdiction on any basis provided under the federal constitution. A court may have either "general" or "specific" jurisdiction over a party. General jurisdiction lies where the defendant has "continuous and systematic contacts" with the forum state. Electronics for Imaging, Inc., 340 F.3d at 1349. Plaintiff does not contend that this court has general jurisdiction over any party. Specific jurisdiction lies where the cause of action arises at least in part out of activities that defendant has purposefully directed toward the forum state and where the exercise of jurisdiction is otherwise reasonable. See LSI Industries Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994).

In part, plaintiff relies on a stream of commerce theory to support personal jurisdiction. Jurisdiction lies over a defendant that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Beverly Hills Fan Co., 21 F.3d at 1565, (internal quotations omitted).[5] Where the action for

---

[5] In Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987), the Supreme Court split over the degree and character of minimum contact required under the stream of commerce theory. See Beverly Hills Fan Co., 21 F.3d at 1566. Four justices concluded that a defendant that places products into a "regular and anticipated" stream of commerce and is aware that the product is or may be directed into the forum state is susceptible to jurisdiction. Four other justices, however, concluded that a showing of some "additional conduct" is required to satisfy due process. See Asahi Metal Industry Co., 480 U.S. at 116-17 (Brennan, J., concurring in part); Beverly Hills Fan Co., 21 F.3d at 1556. The Federal Circuit has steadfastly refused to take a position as to which view it considers controlling. See, e.g., Kernius v. Int'l

patent infringement involves a product shipped into a state through such an established distribution channel, the due process requirement of "minimum contacts" with the state is satisfied. Id. At 1565. The stream of commerce theory has been applied to the sale and distribution of consumer products sold on the retail market. See id. at 1566 - 67. Here, the accused systems are large, specialized military equipment, sold pursuant to a one-time military procurement which does not rise to the level of an established distribution channel. For these reasons, the Beverly Hills Fan Co. stream of commerce theory is not by itself sufficient to sustain jurisdiction over all defendants.

### ESCAPE VELOCITY

Plaintiff has established *prima facie* that Escape Velocity has sufficient contacts with California to exercise "specific jurisdiction" over it. Viewing the factual conflicts in plaintiff's favor, see Electronics for Imaging, Inc., 340 F.3d at 1349, Escape Velocity's provision of financing to allow Mach II to acquire the accused systems, eighteen of which were sent to Point Hueneme, California, demonstrate its crucial role in the manufacture and sale of some or all of the accused systems and their delivery to California. Put another way, it appears from the record that had Escape Velocity not paid Acqua, at least some of the accused systems either would not have been manufactured or

---

Electronics, Inc., 433 F. Supp. 2d 621, 625 (D. Md. 2006) (discussing Federal Circuit cases). The resolution of these motions does not require me to resolve the question.

would not have been sold to Mach II and delivered to California.  Providing financing for systems which it knew were going to be delivered to California is an activity of Escape Velocity purposefully directed towards California such that it is reasonable to exercise jurisdiction over it with respect to a claim that the accused systems infringe plaintiff's patents.  See Hanson v. Denckla, 357 U.S. 235, 253-4 (1958); Beverly Hills Fan Co., 21 F.3d at 1566.

Exercising jurisdiction over Escape Velocity also comports with concepts of "fair play and substantial justice." Burger King Corp. V. Rudzewicz, 471 U.S. 462, 477 - 8 (1985).  Balancing the factors for determining reasonableness, jurisdiction over Escape Velocity in California is reasonable.  See Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995).  The accused systems were delivered to California, and plaintiff is located in California.  California has a significant interest "in discouraging injuries that occur within the state" and to its citizens.  See Electronics for Imaging, Inc., 340 F.3d at 1351 - 52.  The burden of requiring Escape Velocity to defend this suit in California is minimal since it shares counsel with Mach II and since many witnesses are located in California. The accused systems, and the Navy personnel who use them, are located in Port Hueneme, California.  Plaintiff's witnesses are in the Bay Area.  Accordingly, Escape Velocity's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)is **DENIED.**

**CLEAR WATER**

Plaintiff has failed to make a *prima facie* showing of specific jurisdiction over Clear Water.  Clear Water had almost no involvement with the sale or delivery of the accused systems to the Navy in Port Hueneme, California.  While Clear Water was listed as the "place of performance" of the third purchase order between Mach II and the government its cancellation negates what little relationship Clear Water had to the accused systems.[6]  The use on one occasion of Clear Water letterhead to address a written complaint to Acqua regarding invoices for certain systems (Pl.'s Supl. Opp., Exh. 7) while troublesome, seems more of an anomaly than anything else.  That letter was not sent to California.

It appears that, from at least December 2005 through December 2006, Clear Water maintained a website that advertised the accused systems to Californians.  However, the passive website only displayed products for sale and allowed visitors to request further information; visitors could not place orders on the site.  There is no evidence that the website specifically targeted Californians.  "A passive website is insufficient to establish purposeful availment for the purpose of due process." Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419-20 (9th Cir. 1997).  Plaintiff has failed to provide *prima facie* evidence that its injuries arise out of Clear Water's contacts with California or that Clear

---

[6] The "place of performance" is where government inspectors visit to inspect and accept the items to be shipped per the order.  Mach II's business address and place of operations was the same as Clear Water's.

7

1  Water purposefully directed its contacts with California.  See
2  Electronics for Imaging, Inc., 340 F.3d at 1350-1.  As such,
3  Clear Water's motion to dismiss is **GRANTED**.

## DENOUEMENT

Denouement's contacts with California also fail to give rise to personal jurisdiction.[7]  Mach II provided Denouement with twenty-two water purification units in satisfaction of a debt owed Escape Velocity.  It is undisputed that these twenty-two units were transferred to SolarDiesel and are currently in its possession in Florida.  The record does not disclose that these units are accused of infringement or that they have ever been to California.  Denouement's involvement in accepting and transferring the twenty-two units that remained in Florida do not link Denouement to California.

Denouement admits to having advertised water purification units on its website at www.sdvo.net, formerly at www.sdvo.us.  There is no evidence that these units infringed.  In contrast to Clear Water's website, Denouement's included a link to the "PayPal" service, through which customers could make payments to Denouement via the internet.  No customer, however, has ever used the PayPal link on either Denouement's former or current website. Indeed, no items are available for sale on its current website.  There is no evidence that the site's content was in any way targeted to California.  Given the character of the website and Denouement's lack of connection

---

[7]  Denouement has never maintained an address or place of business in California, paid taxes in California, or brought or defended a lawsuit in California.

1  to California, its maintenance of the site does not establish
2  sufficient minimum contacts.  <u>See, e.g.</u>, <u>Trintec Indus., Inc.</u>,
3  395 F.3d at 1281.  Accordingly, Denouement's motion to dismiss
4  is **GRANTED**.

## SOLARDIESEL

6     SolarDiesel is also a Florida corporation with which Mr.
7  Stanton is associated.  SolarDiesel does not maintain a
8  website, does not maintain an office or place of business in
9  California, and has never maintained an address in California.
10 Although Mr. Stanton admits it wants to sell the twenty-two
11 systems in its possession, their purchase and storage do not
12 in any way connect SolarDiesel to California.  As such,
13 plaintiff has not made a *prima facie* showing that SolarDiesel
14 has sufficient minimum contacts to California to establish
15 personal jurisdiction and SolarDiesel's motion to dismiss is
16 **GRANTED**.

17    Defendants also request that the suit be transferred
18 pursuant to 28 U.S.C. § 1404(a) to the Middle District of
19 Florida, which they contend is a more convenient forum.  I
20 disagree that Florida would be a more convenient forum.
21 Defendants contend that the majority of witnesses would be
22 located in Florida.  However, the inventors of the patented
23 technology, as well as witnesses regarding the design,
24 function, and operation of plaintiff's systems, are located in
25 California.  The accused systems and the Navy personnel with
26 knowledge of them are located in California.  As such, the

9

motion to transfer venue is **DENIED**.[8]  Escape Velocity shall answer the complaint by **November 15, 2007**.

Dated:  October 31, 2007

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-BZCASES\Goodman Ball\Motion to Dismiss Order .BZ FINAL.wpd

---

[8] Escape Velocity and SolarDiesel's motion for leave to file a late Reply is **GRANTED,** as unopposed.

10